Filed 2/18/15  Wong v. Tom CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION ONE

| | |
|---|---|
| LORAINE WONG et al., Plaintiffs, Cross-defendants and Respondents, v. RICHARD TOM, Defendant, Cross-complainant and Appellant. | A137464 (San Mateo County Super. Ct. No. CIV464944) |

While driving at high speed and impaired by alcohol, defendant Richard Tom struck the car of plaintiff Loraine Wong, killing a passenger in her car.  He argues the jury's findings that Wong was not comparatively negligent and he had acted with malice, supporting an award of punitive damages, were not supported by the evidence.  We affirm.

## I.  BACKGROUND

Tom and a longtime friend had dinner at Tom's house.  They drank cocktails before dinner.  After nightfall, the two drove in separate cars on the residential streets of San Carlos, where the posted speed limits were between 30 and 35 miles per hour.  Wong drove her car through an intersection and into the path of Tom's car, and they collided.  In the kilometer of road just prior to the point of impact, Tom's car had traveled at speeds as high as 85 miles per hour.  At the time of impact, he was traveling more than 51 miles

per hour. Wong's two daughters were in the car with her, and one was killed by the impact of the collision.[1]

Wong, her husband, and their surviving daughter filed suit. At trial, Tom did not dispute he was negligent in causing the collision, but he contended Wong, who was using her cell phone at the time of impact, was comparatively negligent, and he disputed her request for punitive damages. After a 19-day trial featuring a painstaking reexamination of the events of that night by several different police officers and other experts, the jury imposed sizable compensatory damages, found Wong not comparatively negligent, and levied $8,000 in punitive damages. The trial court denied Tom's motions for partial judgment notwithstanding the verdict and a new trial.

## II. DISCUSSION

As he did at trial and in posttrial motions, Tom contends the jury's findings that Wong was not comparatively negligent and he acted with malice for purposes of imposing punitive damages were not supported by the evidence.

### A. *Wong's Comparative Negligence*

Tom contends the finding Wong was not comparatively negligent was not supported by substantial evidence because (1) she was using her cell phone at the time of the accident and (2) she did not see the headlights of Tom's onrushing vehicle.

"The general rule in California is that '[e]veryone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person . . . .' [Citation.] In other words, 'each person has a duty to use ordinary care and "is liable for injuries caused by his failure to exercise reasonable care in the circumstances . . . ." ' " (*Cabral v. Ralph's Grocery Co.* (2011) 51 Cal.4th 764, 771.) "Under comparative fault, 'liability for damage will be borne by those whose

---

[1] Given the complexity of the expert testimony and our limited standard of review, we have not attempted to summarize the voluminous evidence presented at trial regarding the precise circumstances of the accident. We describe such evidence as is relevant to our disposition in the discussion section.

negligence caused it in direct proportion to their respective fault.' " (*Leung v. Verdugo Hills Hospital* (2012) 55 Cal.4th 291, 303.)

We review a jury's findings regarding comparative negligence for substantial evidence. (*Pfeifer v. John Crane, Inc.* (2013) 220 Cal.App.4th 1270, 1285–1286 (*Pfeifer*).) "On review for substantial evidence, we 'consider the evidence in the light most favorable to the prevailing party, giving that party the benefit of every reasonable inference and resolving conflicts in support of the judgment. [Citation.]' [Citation.] Under this standard, ' "the appellate court may not substitute its judgment for that of the jury or set aside the jury's finding if there is any evidence which under any reasonable view supports the jury's apportionment." ' " (*Id.* at p. 1286.)

### 1. *Wong's Cell Phone Use*

Wong testified that the intersection where the accident occurred was less than a mile from her home, and she was familiar with it. As she approached the intersection, Wong was holding a cell phone to her ear and conversing with her sister. At some point as she approached the intersection, Wong ended the conversation but continued holding the cell phone in her hand. The intersection was marked by a stop sign, and Wong stopped her car at the first line of the pedestrian crosswalk and looked both ways. Because her vision was blocked in one direction from that vantage point, Wong eased her car across the second line of the crosswalk, again looking both ways. From here, her line of sight was unobstructed, allowing her to see to the next nearest intersection on the cross street. Seeing no oncoming traffic, Wong made a slow left turn onto the cross street. Her recollection was that she had reached the middle of the intersection when she felt the impact of the collision. It came with no warning at all. Wong was uncertain what happened to the cell phone, but she did not believe it distracted her in making the turn.[2]

Wong's sister, who was at home at the time of the telephone call, essentially confirmed Wong's account, testifying that when she finished the call with Wong she put

---

[2] On critical issues, Wong's account at trial was not consistent with her account to investigating officers immediately after the accident. The credibility of Wong's account at trial, of course, was an issue for the jury.

3

her own cell phone down on a counter. She turned to clean her desk and was startled by the sound of her sister screaming for her children, which she realized was coming from her phone. Wong's sister did not know how much time elapsed between the end of the conversation and the screaming, but she had "time to turn around and start shuffling [her] papers and [her] laptop."

This testimony provides substantial evidence to support a conclusion Wong's cell phone use did not constitute negligence. A driver's use of a cell phone can constitute negligence because attention to the device distracts a driver from single-minded concentration on the tasks of driving. Because, as Wong testified, she had completed the telephone conversation around the time she stopped at the intersection, there was no reason to presume her cell phone use distracted her or otherwise interfered with her driving in the crucial seconds as she entered the intersection. Tom does not contend merely holding the cell phone interfered with Wong's driving in any material way.[3]

Further, regardless of the cell phone, Wong's conduct at the intersection, as described in her testimony, was appropriately careful: she stopped, as required, and looked both ways at least twice before proceeding into the intersection. Assuming, as we must, that this testimony was true, it demonstrates the cell phone did not impair her driving. Wong confirmed this, testifying the cell phone did not "somehow . . . distract[] [her] or prevent[] [her] from being able to see what [she was] doing" as she made the turn. Tom argues the latter testimony was "conclusory," but Wong's description of her actions in making the turn gives evidentiary support to the conclusion. Tom also derides her testimony as "unsupported" and "self-serving," but these are characterizations going

---

[3]Although Tom's opening brief states more than once that Wong continued to hold the cell phone to her ear during the turn, in fact Wong testified she did not recall where the phone was, other than still in her hand. Tom's brief does state in passing that "Holding the phone encumbered a hand that should have been on the wheel," but there is no basis for believing Wong would have avoided the accident had she had both hands on the wheel. Tom also contends Wong only testified about her cell phone use before she made the turn, but did not address what occurred during the turn. Because Wong concluded the conversation before the turn, it can be inferred the nature of her use of the cell phone before the turn continued during the turn.

4

to the credibility of the testimony, and credibility is the province of the jury. We do not find Wong's description of her actions that night to be so implausible that it cannot be believed.

Tom almost contends the jury was required to find Wong negligent as a matter of law under Evidence Code section 669, subdivision (a), which codifies the doctrine of negligence per se. (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 927.) We say "almost contends" because Tom acknowledges Wong's conduct was not illegal at the time of the accident. The accident occurred in February 2007. The law banning the use of handheld cell phones while driving, Vehicle Code section 23123, was enacted in 2006, but the Legislature set an effective date of July 1, 2008, over a year after the accident. (Stats. 2006, ch. 290, § 4, pp. 2366–2367.) As a result, as Tom concedes, the statute cannot be invoked as a standard of care under Evidence Code section 669.[4]

Despite the concession, Tom argues we should adopt Vehicle Code section 23123 as a rule of thumb for negligence, based on the public policy it embodies. Even under Evidence Code section 669, however, the violation of a statutorily established standard of care creates only a *presumption* of negligence. Assuming Wong's use of the cell phone as she approached the intersection constituted negligence per se, the jury could have found the presumption rebutted by Wong's testimony that as she approached the intersection she ended her conversation and gave her undivided attention to the road. Accordingly, even if we did adopt Vehicle Code section 23123 as a rule of law, we would have no basis for finding negligence as a matter of law on this evidence.[5]

### 2. *Wong's Failure to See Tom's Car*

Tom also contends Wong should have been found negligent because she did not see his approaching car. First, Tom claims Wong's testimony that she was looking left,

---

[4] If, as Tom argues, the Legislature expressed its intent through this legislation that use of handheld devices would be considered negligence per se, it appears to have intended that to be the rule only after July 2008.

[5] Nor is there any basis for remanding for retrial on this issue. Tom waived the argument by failing to make an appropriate request at trial.

in the direction of Tom's oncoming car, at the time she entered the intersection did not constitute substantial evidence to support such a finding because it contradicted her contemporary statement to police that she was looking the other direction. This was an issue for the jury, which was presented with both versions. The cases cited by Tom in support of his argument are inapplicable because they are premised on a witness's attempt to contradict prior testimony or judicial admissions. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21–22, disapproved on other grounds in *Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 944 [affidavit used to contradict deposition testimony]; *Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 654 ["Involved in the instant case is . . . a prior attorney declaration, representations to the court, admissions in pleadings, and a long history of conduct."].) Wong's statements to police were not made under oath as part of judicial proceedings.

Second, Tom claims Wong's statement that she looked left but did not see the oncoming car is not credible in light of the other evidence. According to Wong's expert witness, Tom's car was approximately 211 feet away from the intersection when she entered it. Tom argues Wong necessarily would have seen it had she looked in that direction, since it was dark and Tom's headlights were illuminated. If she did not see the car, he argues, it could only have been because she did not look in his direction.

Tom's argument proves too much. As with other cases of internally inconsistent testimony, it cannot be determined what part of the inconsistency is true and what part is false. It could be, as Tom argues, Wong was not telling the truth about looking to the left. Alternatively, it could be that she did look left, saw Tom's car, but no longer recalls seeing the car, perhaps because it was far enough away that it did not register as a threat. As noted earlier, resolving this type of conflict is the province of the jury. We decline to rule as a matter of law about what "must have" happened that night.

In any event, the ultimate issue is not whether individual portions of Wong's testimony were credible but whether her decision to enter the intersection was negligent. As Tom argues, Wong was required to yield to Tom's car if it presented an "immediate hazard" (Veh. Code, § 21802, subd. (a)), which the trial court defined to exist if Tom's

6

car "[was] so near or [was] approaching so fast that a reasonably careful person would realize there is a danger of collision or accident." Wong's expert testified that Tom's car was far enough away at the time Wong entered the intersection that, had Tom been travelling at the posted speed limit, or even only 10 to 15 miles per hour above the speed limit, there would have been no accident. He would have had time to slow his car and avoid Wong's car. Instead, Tom did not even have time to apply the brakes before the collision. Given the difficulty of judging a distant vehicle's speed at night, the jury could have concluded Wong's decision to proceed was not negligent, given what she could have perceived about the speed and distance of Tom's car.

## B. *Punitive Damages*

Tom contends there was no substantial evidence to support a finding he acted with malice, as necessary to support an award of punitive damages.

"Generally, punitive damages may be awarded only when the trier of fact finds, by clear and convincing evidence, that the defendant acted with malice, fraud, or oppression. [Citation.] As nonintentional torts support punitive damages when the defendant's conduct 'involves conscious disregard of the rights or safety of others,' our focus is on malice and oppression. [Citation.] As defined in the punitive damages statute, '[m]alice' encompasses 'despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights and safety of others,' and '[o]ppression' means 'despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.' [Citation.] The term ' "despicable," ' though not defined in the statute, is applicable to 'circumstances that are "base," "vile," or "contemptible." ' [Citation.]

"Under the statute, 'malice does not require actual intent to harm. [Citation.] Conscious disregard for the safety of another may be sufficient where the defendant is aware of the probable dangerous consequences of his or her conduct and he or she willfully fails to avoid such consequences. [Citation.] Malice may be proved either expressly through direct evidence or by implication through indirect evidence from which the jury draws inferences. [Citation.]' [Citation.]

7

"In addressing [a challenge to the award of punitive damages], we 'inquire whether the record contains "substantial evidence to support a determination by clear and convincing evidence . . . ." [Citation.]' [Citation.] Under that standard, we review the evidence in the light most favorable to the [plaintiffs], give them the benefit of every reasonable inference, and resolve all conflicts in their favor, with due attention to the heightened standard of proof." (*Pfeifer, supra*, 220 Cal.App.4th at p. 1299.)

The jury was instructed consistently with this decisional law. The court told the jury the imposition of punitive damages required a finding of malice or oppression. "Malice" was defined as meaning Tom "acted with the intent to cause injury" or Tom's "conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another." "Oppression," the court instructed, "means that [Tom's] conduct was despicable and subjected [plaintiffs] to cruel and unjust hardship and knowing disregard of their rights. [D]espicable conduct is conduct that is so vial [*sic*: vile], based for [*sic*: base, or] contemptible that it would be looked down on and despised by reasonable people."

Tom does not dispute he was familiar with the intersection where the accident occurred and knew it had impaired visibility due to perennially parked cars, was driving more than 51 miles an hour as he approached that obscured intersection, had been driving 85 miles an hour within less than a mile of the accident site, was operating at these speeds on residential streets with posted speed limits of 30 and 35 miles per hour after dark, and had been drinking. At the speeds Tom chose to drive, approaching an intersection with an impaired view, inattention to the road by a sober driver could result in disaster. Yet Tom was driving in this manner after drinking, thereby gravely increasing the risk he would not be able to respond adequately to unexpected events. Tom must have known such conduct carried "probable dangerous consequences."

We presume the jury followed the trial court's instructions in awarding punitive damages (*Pope v. Babick* (2014) 229 Cal.App.4th 1238, 1250), and " 'our role in reviewing the jury's work is a deferential one' " (*Amerigraphics, Inc. v. Mercury*

8

*Casualty Co.* (2010) 182 Cal.App.4th 1538, 1560). Here, there is no basis for second-guessing.

Tom's argument consists largely of quibbling with the opinions of plaintiffs' experts. Tom first contends that because the evidence of his exact speed at the time of impact was "a morass of conflicting opinions and inferences . . . that could not be fully reconciled," there was no clear and convincing evidence of his speed as required to support a finding of malice. As discussed above, however, Tom was concededly traveling faster than 51 miles per hour at the time of impact; the only issue was how much faster.[6] Accordingly, clear and convincing evidence supported a finding of more than 51 miles per hour, which, as discussed above, was sufficient to support a finding of malice under the circumstances.

Tom argues driving at a speed of somewhat greater than 51 miles per hour on this particular stretch of road cannot be considered "vile" because there was testimony other drivers exceeded the speed limit on the street and a police officer testified she did not ticket speeders below 50 miles per hour. While we do not necessarily accept Tom's argument that conduct cannot be considered reckless if everyone else does it, we need not resolve the issue. As noted, it was not Tom's speed alone that supported a finding of malice, it was his decision to use very excessive speed at night, while approaching an intersection he knew to have an impaired view, while his judgment was impaired by alcohol. For these reasons, the exact degree of excess in his speed at the time of impact is not critical to the substantial evidence review.

Tom also argues there was no clear and convincing evidence he was impaired by alcohol because the evidence "is as consistent with impairment as lack of impairment."

---

[6] A sensor inside Tom's car measured his speed a split second after the collision at 51 miles per hour, setting a floor under his speed just prior to collision. The expert who testified about the sensor said the reading indicated the speed of Tom's car at the point of the collision was "some small speed higher than 51." That expert seems to have placed Tom's likely speed at collision at 60 miles per hour, although his testimony is a bit ambiguous on this point. Soon after the accident, Tom told a paramedic he was traveling about 55 miles per hour at the time of the accident.

9

The argument disregards our substantial evidence standard of review. The jury could easily have concluded, based on evidence in the record, that Tom still had alcohol on his breath nearly two hours after the accident. At that time, after some two hours to sober up, Tom still failed a field sobriety test. When the police attempted to give Tom a breathalyzer test, he attempted to cheat the test by "covering the device with his tongue and with his lips and not actually blowing any air into the [device]," suggesting he was well aware of the possibility he could be found intoxicated. A blood test for alcohol was not performed until three hours after the accident, at which time Tom's blood-alcohol level was still at 0.04 percent. Based on that blood-alcohol level, and recognizing that alcohol is metabolized over time, plaintiffs' expert testified plausibly that Tom's blood-alcohol level at the time of the accident was between 0.09 and 0.10 percent, over the legal limit. Together, this constitutes substantial evidence of impairment by alcohol at the time of the accident, even with "due attention to the heightened standard of proof" owing to the requirement of clear and convincing evidence. (*Pfeifer, supra*, 220 Cal.App.4th at p. 1299.) The contrary evidence discussed by Tom, including his expert's testimony, is not so persuasive as to undermine the value of this substantial evidence.

## III. DISPOSITION

The judgment of the trial court is affirmed.

_____
Margulies, J.

We concur:


_____
Humes, P.J.


_____
Dondero, J.